AO 91 (Rev. 11/11) Criminal Complaint　　　　　　　　　　　　　　　　AUSA Robert Ladd (815) 987-4478



FILED
4/25/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: |
|---|---|
| v. | **23CR50019** |
| RONALD COLEMAN | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about April 24, 2023, at Morrison, Illinois, in the Northern District of Illinois, Western Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) and (b)(1)(ii)(II) | Did knowingly and intentionally possess with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance. |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

_____
DANIELLE MARTIN
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Complaint and Affidavit by telephone.

Date: April 25, 2023　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Judge's signature

City and state: Rockford, Illinois　　　　　　　　Margaret J. Schneider, U.S. Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Printed name and title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, Danielle Martin, being duly sworn, state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration ("DEA"). I have been so employed for approximately six years.

2. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to controlled substance trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3. I have received training in controlled substance investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substance laws.

4. This affidavit is submitted in support of a criminal complaint alleging that Ronald COLEMAN has violated Title 21, United States Code, Section 841(a)(1) and (b)(1)(ii)(II). Because this affidavit is being submitted for the limited purpose of

establishing probable cause in support of a criminal complaint charging COLEMAN with possession with intent to distribute a controlled substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

5. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, and on information provided to the DEA.

I. **FACTS SUPPORTING PROBABLE CAUSE**

6. On or about April 24, 2023, at or near Morrison, Illinois, a Master Sergeant with the Illinois State Police (hereinafter "the trooper") was conducting traffic and vehicle enforcement on Interstate 88 near mile-marker 26. The trooper has been employed by the Illinois State Police for approximately 15 years. As part of his duties as an Illinois State Trooper, he investigates and enforces Federal/Illinois Motor Carrier Safety violations relating to traffic safety and criminal offenses, including narcotics trafficking violations of the Illinois Controlled Substance Act. He has received training in the enforcement of Federal/Illinois Motor Carrier Safety laws at the Illinois State Police Academy, during a field training program and yearly since 2008. The trooper has completed approximately one-thousand motor carrier safety investigations. In addition, he has received hundreds of hours in criminal interdiction training, with a significant emphasis in narcotics trafficking. The trooper has conducted hundreds of narcotics trafficking investigations and is certified as an instructor in criminal and drug interdiction by the Drug Interdiction Assistance

Program (DIAP) and the Illinois State Police.

7. On this same date, the trooper observed a semi-truck bearing California trailer registration 4HK4716 (hereinafter the **Subject Vehicle**), with an expired International Fuel Tax Association (IFTA) sticker and conducted a traffic stop on the **Subject Vehicle.**

8. The trooper approached the vehicle and began the inspection process for the **Subject Vehicle.** The trooper made contact with the driver of the vehicle, later identified as Ronald COLEMAN, who exited the cab of the **Subject Vehicle.** During the inspection process, the trooper made several observations that he noted were unusual, as compared to his experience interacting with other truck drivers over the course of his 15-year career. The trooper noted several anomalies during the inspection and during his conversation with COLEMAN, including, but not limited to: the trailer of the semi-truck was secured by both a bolt-seal and a padlock, the **Subject Vehicle** was traveling with less than half a truckload of freight from California (according to paperwork provided during the inspection), the **Subject Vehicle** was "off-route" from its point of origin to its ultimate destination, and COLEMAN initially indicated he did not know how much he was being paid for the transport.

9. As part of the inspection process, the trooper utilized a narcotics-detection K9, "Roman," to perform an exterior sniff of the **Subject Vehicle.** K9 Roman alerted to the presence of a controlled substance in the **Subject Vehicle.**

10. Based on the alert by K9 Roman, the trooper conducted a search of the

semi-truck, including the semi-trailer. When the trooper opened the semi-trailer, he observed that less than half the semi-trailer was filled with freight, which was shelving for server towers. He also observed two suitcases between the shelving toward the back of the semi-trailer, which he found to be highly unusual. The trooper opened the two suitcases, which revealed approximately 91 kilograms of a substance that field-tested positive for the presence of cocaine. The substance was packaged up in "kilo" packages (approximately 1 kilogram in weight), which I know from my training and experience is a common quantity and style of packaging for the distribution of cocaine.

11. COLEMAN was taken to DEA Rockford Resident Office and given formal *Miranda* warnings. COLEMAN acknowledged his rights and began to speak with members of the DEA, which was audio recorded by agents.

12. During that conversation, COLEMAN admitted that he knew there was cocaine in the semi-trailer of his truck. COLEMAN stated he received the semi-trailer that was already loaded with the cocaine from a truck yard in California. COLEMAN stated he was going to be paid $7,500.00 to transport the cocaine from California to Chicago, Illinois. COLEMAN advised that he makes deliveries of cocaine to Chicago approximately two times per month. COLEMAN stated he was going to receive bulk United States Currency (narcotics proceeds) after delivering the cocaine to the warehouse in Chicago, and would then transport the bulk currency back to California. COLEMAN stated he would be paid the $7,500.00 once he returned to California.

13. Based on my training and experience, the quantity of cocaine contained

in the **Subject Vehicle** is intended for distribution rather than for personal consumption. In addition, based on my training and experience, the concealment method is consistent with the way drug traffickers would conceal controlled substances to avoid detection.

## II. CONCLUSION

14. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on or about April 24, 2023, Ronald COLEMAN knowingly and intentionally possessed with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(ii)(II).

FURTHER AFFIANT SAYETH NOT.

Danielle Martin
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on April 25, 2023.

Honorable Margaret J. Schneider
United States Magistrate Judge